IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

ALBERT LEE GARRARD,           )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO.
v.                            )
                              )        01-AR-1879-J
E.B. PURSER,                  )
                              )
        Defendant.            )
                              )
                              )
                              )
                              )

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment filed by
defendant, E.B. Purser ("Purser"). Plaintiff, Albert Lee Garrard
("Garrard"), brings this case for the alleged violation of his
right under 42 USC § 1983 to be free of cruel and unusual
punishment and denial of substantive due process as a by-product
of negligent training and supervision, and a violation of the
Code of Alabama § 14-6-19 (1975). Purser's motion for summary
judgment is due to be granted. Purser originally was sued both in
his individual capacity and in his official capacity as Sheriff
of Marion County, Alabama. The action insofar as it was brought
against Purser in his official capacity has already been
dismissed.

**Statement of Undisputed Facts**

On March 22, 2001, Garrard was arrested in Charlotte, North

1

Carolina, by the Mecklenburg County Sheriff's Department. At some point in time after his arrest, he was transferred to Pickens County, South Carolina. Garrard claims at that time he was taking three different types of medication and that he informed the intake officer at Pickens County that he had high blood pressure, was borderline diabetic, had gout, and acid reflux. Obviously the intake officer in South Carolina did not work for Purser.

Garrard was extradited from South Carolina to Alabama, arriving at the Marion County Jail, on April 24, 2001.  As Sheriff, Purser was in charge of running the jail. Before being released from South Carolina, Garrard signed a form indicating that Indocin was his only medication. On that form, Garrard stated that the purpose of the medication was for his feet (i.e., gout). Garrard claims that when he arrived at the Marion County jail two of his medications had run out. The agency that transported Garrard to Marion County Jail presented the jailers with only one prescription medication, the anti-inflammatory Indocin, for gout. This medication was given to Garrard as prescribed until the prescription ran out on April 28, 2001. The prescription was refilled on May 1, 2001 after the pharmacy received the approval of Garrard's doctor.  In the late hours of May 1, 2001, Garrard felt ill and paramedics were called. Garrard testified that it was because he had not received his prescription medication since arriving at the jail that he became

2

ill. He was taken to the emergency room at Marion Regional
Hospital, where he received medical treatment as to which he has
no complaint.

In the hospital, Garrard was treated for chest pains.
According to Dr. Szebenyi, Garrard did not have any-gout related
symptomatology, so that his chest pain could not have been
related to gout.  In his affidavit, Dr. Szebenyi stated that
Garrard's blood pressure was not of an emergent nature and that
there was no evidence of heart damage.  Dr. Szebenyi testified
that Garrard's chest pains could have been caused by several
factors, such as an ulcer, duodenitis, or a GI bleed and were
unlikely to have been caused by Garrard not receiving his
hypertension medication. In his affidavit, Dr. Bates agreed with
Dr. Szebenyi's assessment of Garrard's health condition.

Garrard also claims that he slept on the floor without a
mattress and used his underclothes as a pillow for part of his
stay. He says that he made several complaints about not getting
his medication and the deterioration of his medical condition.
Jail Administrator, Cecil Dobbs ("Dobbs"), denies that he ever
received any complaints from Garrard.

The Marion County Jail policy with regards to medications is
"if [an inmate] come[s] into the jail . . . if [the inmate] has
medicine that is prescribed by a physician, then we log that down
and then we give it to them as prescribed by a doctor." It is

3

Dobbs' policy to assess all prescription medications on Fridays such that a determination can be made as to the necessity of refills that are considered life-support medications such as heart condition, blood pressure, diabetes, seizures, etc. If it is not a life threatening medication, refills are not obtained until Monday morning.

Purser has been Sheriff for approximately seven and half years. When asked at his deposition about the chain of command, he said no one supervises him and he does not have to answer to anyone. Purser also testified that he provided no written guidelines or policies to his subordinates. Purser supervised Dobbs, who in turn supervised the jailers. Purser had no personal knowledge of any of Garrard's alleged medical conditions, any medications he may have been taking, or any aspect of his medical status. Rather, Dobbs handled the day-to-day operations of the jail and matters related to prescription medication. At no time did Purser receive any letter, request, grievance, or any other communication of any type from Garrard concerning his medical condition, the need for medical attention, or any aspect of his incarceration.

## Analysis

Purser says that he is entitled to summary judgment on Garrard's claim of deliberate indifference. Federal courts have construed the Eighth Amendment for convicted inmates, and by

4

analogy the Fourteenth Amendment for pretrial detainees, to
generally proscribe "deliberate indifference [on the part of jail
officials] to serious medical needs" of inmates. *Estelle v.
Gamble,* 429 U.S. 97, 104 (1976).   It makes no difference, then,
as to whether Garrard was a convict or a pretrial detainee. The
plaintiff must prove: (1) subjective knowledge of a risk of
serious harm, (2) disregard of that risk, and (3) conduct that is
more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248,
1255 (11th Cir. 1999). The only basis upon which Garrard alleges
that Purser was deliberately indifferent arises under Purser's
alleged failure to provide him with needed medication and the
alleged failure to fill needed prescriptions.

A review of the evidence demonstrates that Garrard did not
have what is legally recognized as a "serious medical need" while
incarcerated in the Marion County Jail. Garrard arrived with one
prescription. The undisputed record from South Carolina and from
TransCor, the transporting company, constitute uncontroverted
proof of this fact. Garrard was given the one prescription the
Marion County jailers received. Further, the undisputed evidence
is that the prescription for gout was refilled as soon as it
could be.  The testimony by jail personnel, the medication logs,
and the testimony of the local pharmacist all are consistent with
the absence of deliberate indifference. As soon as Garrard had a
serious problem an ambulance was called and he promptly received

5

medical treatment. There is no evidence that Garrard's medical problems other than gout were related to the fact that his medication for gout ran out and was not administered for three days. Garrard went to the hospital complaining of chest pains. Both treating physicians concluded that these pains were not related to his gout, that his blood pressure was not at a level that required emergency treatment, and that the chest pains were unlikely to be have been caused by not receiving hypertension medication.

Garrard has produced no evidence that Purser had any knowledge of what Garrard's medication was, or that he received a single request for medical care. Garrard testified that he never spoke to Purser about anything and never had any contact with him while incarcerated. Yet, Garrard claims that "Sheriff Purser knew that Mr. Garrard was begging for medical attention, and intentionally left him lying in his cell without providing medical care." Garrard claims that he filled out several complaint forms, but he does not offer any written proof of this. An affidavit by Deputy Sheriff Randy Tice ("Tice") states that the Garrard may have made complaints and that they may have been destroyed because "It wouldn't be the first time someone at the department has destroyed documents." Defendant has filed a motion to strike this affidavit because it was allegedly obtained in violation of Rule 4.2 of the Alabama Rules of Professional

6

Conduct. However, with or without the affidavit of Tice, Garrard has not presented a genuine dispute of material fact as to whether he had a **serious** medical condition that Purser **intentionally** ignored. Even if Garrard filed a complaint with his jailers, there is no proof that Purser ever saw it. The only evidence Garrard offers are the contentions he made in his depositions, which merely mirror his complaint, the affidavit of Randy Tice, and several citations to the deposition testimony of Dobbs and various jailers regarding their views on the jail policy regarding dispensing medication and responding to emergencies. This is not sufficient evidence to raise a genuine dispute of material fact of the essential elements of a deliberate indifference claim, assuming the truth of all of Garrard's evidence.

Purser remains a party only in his individual capacity. He interposes qualified immunity as a defense. In evaluating a claim of qualified immunity, a court must not only first evaluate whether the plaintiff has alleged the deprivation of an actual constitutional right at all, but if so, the court must determine whether that right was clearly established at the time of the alleged violation. *See Wilson v. Lane*, 526 U.S. 603, 609 (1999). The Eleventh Circuit has made clear that "qualified immunity protects governmental actors is the usual rule; only in exceptional cases will governmental actors have no shield against

claims made against them in their *individual capacities.*"
*Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994)(en
banc)(emphasis in original)(footnote omitted).  An officer
violates an inmate's rights only if he acts with deliberate
indifference to the serious medical needs of the detainee.
*Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (1997).
Garrard has not shown any constitutional right that was clearly
established at the time of the alleged violation and that was
violated by Purser.  Garrard's only response to the qualified
immunity defense is the highly argumentative statement that "the
laws which Sheriff Purser allegedly violated are long-established
and rooted in federal and state law. Accordingly, the defense of
qualified immunity is not available to the Sheriff." Garrard has
not pointed out a clearly established principle of law Purser is
suppose to have violated. As discussed above, Garrard has
produced no evidence that Purser acted with deliberate
indifference to his serious medical needs. The undisputed facts
in this case simply do not describe any violation of clearly
established law. There is no evidence to suggest that Purser had
any knowledge of a risk of serious harm to Garrard or that he
disregarded that risk. Purser is therefore entitled to qualified
immunity and summary judgment for that reason as a matter of law.
      Purser next argues that he is entitled to summary judgment
on the merits of Garrard's § 1983 negligent training and

8

supervision claims. Purser correctly points out that he, as a supervisor, cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 691 (1978). A supervisory defendant can be held liable only if the plaintiff shows either that the supervisor personally participated in, instigated, or adopted the acts comprising the alleged constitutional violation. *Bozeman v. Orum,* 199 F.Supp.2d 1216, 1222 (M.D. Ala. 2002). It is apparent from Garrard's own arguments and citations, that his real claim is one of negligence. Because mere negligence cannot provide a basis for a suit under 42 U.S.C. § 1983, the law of negligence is wholly inapplicable to the assertion of a federal claim. *Baker v. McCollan,* 443 U.S. 137, 139-40 (1979).

Whether this claim is rooted in federal constitutional law or in state tort law, Purser is still entitled to summary judgment.

Purser has not addressed the alleged violation of the Code of Alabama § 14-6-19 (1975) for good reason. This court had already dismissed all claims under state law, with prejudice, in its September 17, 2001 order. Consequently, this claim is no longer part of this action and there was no need to address it.

### Conclusion

This court, by separate order, will grant Purser's motion for summary judgment.

DONE this _18_ day of October, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE